UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NORTH ATLANTIC CARPENTERS CENTRAL COLLECTION AGENCY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BOSTON CARPENTRY LLC, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 23-11563-JCB |

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
[Docket No. 41]

February 13, 2025

The Plaintiff Funds[1] and North Atlantic Carpenters Central Collection Agency have moved for summary judgment against all Defendants. Docket No. 41.[2] For the following reasons, this Court grants the motion.

---

[1] The Plaintiff Funds are The North Atlantic Carpenters Pension Fund, the North Atlantic Carpenters Guaranteed Annuity Fund, the North Atlantic Carpenters Health Benefits Fund, the North Atlantic Carpenters Vacation Savings Fund, and the North Atlantic Carpenters Training Fund. Docket No. 1 at ¶ 4.

[2] On November 16, 2023, the parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes and the case was reassigned to the undersigned. Docket Nos. 17, 18.

I.   FACTS[3]

   A.   The Parties

The North Atlantic States Regional Council of Carpenters (the "Union") is a labor organization.[4] The Plaintiff Funds are employee pension benefit or welfare plans.[5] Each of the Plaintiff Funds is maintained pursuant to collective bargaining agreements between the Union and more than one employer.[6] The North Atlantic Carpenters Central Collection Agency (the "Agency") has been established by the North Atlantic Carpenters Pension Fund and designated by the Trustees of each of the Plaintiff Funds and the Union to collect all monies owed to the Funds by employers pursuant to the collective bargaining agreements.[7]

Defendant Boston Carpentry LLC is a limited liability corporation incorporated under the laws of the Commonwealth of Massachusetts, with a principal place of business in Hyde Park, Boston, Massachusetts.[8] Boston Carpentry is engaged in the business of wood frame carpentry subcontracting work.[9] Defendants Mario Mejia and Mildred Mejia are co-owners and co-managers of Boston Carpentry.[10] As co-owners of Boston Carpentry, the Mejias had personal

---

[3] The facts are largely undisputed and are taken from the parties' Consolidated Statement of Facts (Docket No. __). This Court refers to statements of fact as "SOF" and responses as "Resp." Because this case is before the Court on a motion for summary judgment, this Court sets out any disputed facts in the light most favorable to the Defendants, the nonmoving parties, and resolving all reasonable inferences in his favor. See Clarendon Nat'l Ins. Co. v. Philadelphia Indemnity Ins. Co., 954 F.3d 397, 403-404 (1st Cir. 2020) (citations omitted).

[4] SOF ¶ 1; Resp. ¶ 1.

[5] SOF ¶ 2; Resp. ¶ 2.

[6] SOF ¶ 3; Resp. ¶ 3.

[7] SOF ¶ 4; Resp. ¶ 4.

[8] SOF ¶ 8; Resp. ¶ 8.

[9] SOF ¶ 9; Resp. ¶ 9.

[10] SOF ¶¶ 8, 14, 15; Resp. ¶¶ 8, 14, 15.

discretion over the assets and spending practices of Boston Carpentry, including the payment of bills and other obligations.[11]

### B. Boston Carpentry's Delinquency

Pursuant to the collective bargaining agreements, employers are required to make contributions and payments to the Agency, on behalf of the Funds and the Union, at specified rates for each hour of work covered by the agreements that their employees perform.[12] On December 10, 2021, the Mejias executed a Short Form Agreement with the Union.[13] The Short Form Agreement binds Boston Carpentry to the terms of the collective bargaining agreements between the North Atlantic States Regional Council of Carpenters and its affiliates, and various employer organizations, including the Local Union 723 Wood Frame Construction Agreement (the "723 Agreement").[14]

Pursuant to its collective bargaining agreements with the Union, Boston Carpentry was obligated to make payments to the Agency on behalf of carpenters it employed for each hour of covered work they performed.[15] The agreements provide that, in the event Boston Carpentry failed to make its required contributions in a timely fashion, in addition to principal amounts owed, Boston Carpentry must also pay interest from the date when the payment was due, liquidated damages, and costs and reasonable attorney's fees expended by the Plaintiff Funds in any action to collect the delinquency.[16]

---

[11] SOF ¶¶ 16, 17; Resp. ¶¶ 16, 17.
[12] SOF ¶ 3; Resp. ¶ 3.
[13] SOF ¶ 10; Resp. ¶ 10.
[14] SOF ¶¶ 5, 13; Resp. ¶¶ 5, 13.
[15] SOF ¶ 18; Resp. ¶ 18.
[16] SOF ¶ 19; Resp. ¶ 19.

There is no dispute that Boston Carpentry failed to make contributions in the principal amount of $330,107.36 for covered work performed by the Union carpenters it employed.[17] There is also no dispute that Boston Carpentry has failed to make payments for interest or liquidated damages on those contributions.[18] Rather, the Defendants maintain that they were not required to make some of these contributions because they relate to work performed by undocumented workers.[19]

II.   ANALYSIS

   A.   Standard Of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Carroza v. CVS Pharm., Inc., 992 F.3d 44, 56 (1st Cir. 2021) (citations omitted). The burden is on the moving party to show, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A dispute is genuine where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (citation omitted). A material fact is one with the "potential of changing a case's outcome." Doe v. Trustees of Bos. College, 892 F.3d 67, 79 (1st Cir. 2018).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the

---

[17] See SOF ¶¶ 20-22, 24-25; Resp. ¶¶ 20-22, 24-25.

[18] SOF ¶¶ 26-28; Resp. ¶¶ 26-28.

[19] See SOF ¶¶ 38-40. At oral argument, counsel for Defendants conceded that only a portion of the contributions owed was attributable to work performed by undocumented workers.

opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F.Supp.2d 134, 143 (D. Mass. 2006).

      B.      The United States Immigration And Reform Control Act Does Not Bar The Funds From Recovering Unpaid Contributions From Defendants

There is no dispute that Boston Carpentry has failed to make contributions for covered work performed by the Union carpenters it employed.  See SOF ¶¶ 20-22, 24-25; Resp. ¶¶ 20-22, 24-25; Docket No. 44 at 4-5.  Rather, the Defendants argue that Boston Carpentry did not owe any contributions for undocumented workers who were not authorized to work in the United States.  See id.  The Defendants maintain that undocumented workers are ineligible to be members of the Union and, therefore, Boston Carpentry was not required to contribute to the Union's employment benefit plans for hours worked.  Id. at 4.

Defendants rely on Hoffman Plastics Compounds, Inc. v. NLRB, 535 U.S. 137 (2002). See id.  In Hoffman, the Supreme Court held that the National Labor Relations Board cannot award backpay to undocumented aliens who are terminated for union activity in violation of the

National Labor Relations Act ("NLRA"). Hoffman, 535 U.S. at 140. The Supreme Court explained that allowing a backpay award for "years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by criminal fraud," "not only trivializes the immigration laws, it also condones and encourages future violations." Id. at 149-150.

Courts, however, have distinguished "between 'undocumented workers seeking backpay for wages actually earned,' as in FLSA wage and hour violations, and 'those seeking backpay[20] for work not performed,' as in a termination in violation of the NLRA." Tr. of the Pavers and Road Builders Dist. Council Welfare v. M.C. Landscape Group, Inc., No. 12-CV-0834, 2015 WL 12645526, at *18 (E.D.N.Y. Oct. 16, 2015) (citations omitted), R&R adopted, 2016 WL 1238233 (E.D.N.Y. Mar. 29, 2016); see also Lucas v. Jerusalem Cafe, LLC, 721 F.3d 927, 935 (8th Cir. 2013) ("Far from concluding the NLRA did not protect unauthorized aliens for work *actually* performed, the *Hoffman* court—after considering Congress's intervening enactment of the [immigration laws]—reaffirmed its earlier holding . . . that the NLRA applies to the *actual* employment of unauthorized aliens.") (emphasis in original). Here, the contested contributions are for hours of covered work actually and already performed by the Union carpenters that Boston Carpentry employed. Hoffman, therefore, does not support the Defendants' position.

Defendants' position that their former employees were undocumented, were not eligible to be union workers, and therefore not eligible to receive union benefits has no merit. "Since undocumented aliens are not among the few groups of workers expressly exempt by Congress, they plainly come within the broad statutory definition of 'employee.'" Sure-Tan, Inc. v. NLRB,

---

[20] As explained in Tr. of the Pavers, backpay could include money for years of work not performed. Tr. of the Pavers, 2015 WL 12645526, at *18.

467 U.S. 883, 892 (1984). Nothing in Hoffman overturned this principle. Defendants, therefore, have failed to raise a valid legal defense to Plaintiffs' claims.

Finally, even if Defendants' legal arguments had any merit, they have failed to create a triable issue of fact that the individuals at issue were without lawful work status. Defendants' claim that some of their employees had "questionable status" is based on Mario Mejia's statement that, at some point, he "learned certain union workers were using false citizenship or immigration documentation" and a list of those employees that Mr. Mejia believed were undocumented. Affidavit of Mario Mejia (Docket No. 44-2) ("Mejia Aff.") at ¶¶ 11, 13 and Ex. 1 thereto. The Defendants provide no evidence to support Mr. Mejia's belief as to the immigration status of those employees. Accordingly, I find that the Defendants have failed to raise a triable issue of fact regarding whether they owe contributions to the Plaintiff Funds.[21]

## III.   ORDER

For the foregoing reasons, I grant the Plaintiffs' motion for summary judgment. Within two weeks, the Plaintiffs shall file an updated affidavit regarding the amount of contributions, interest, penalties, and attorney's fees they claim are owed by Defendants. Within two weeks thereafter, Defendants shall file a response to the affidavit stating whether they dispute the amounts owed and, if so, the basis for the dispute.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[21] In addition, as referenced above, Defendants acknowledge that a portion of the contributions owed is for work performed by workers with legal status.